[No. 11973.   Department Two.   June 23, 1914.]

H. BARKER *et al.*, *Respondents*, v. EMIL PFUND *et al.*,
*Appellants.*[1]

BILLS AND NOTES—BONA FIDE PURCHASER—NOTICE.   Creditors of
a trust estate who were beneficiaries of the trust, are not *bona fide*
purchasers of a note, sold to them by the trustee, with outstanding
equities against it, where. they participated in the trust, knew its
purposes and conditions, and knew of the terms and conditions
creating the outstanding equities in favor of the makers; hence
they stand in the position of the trustee as to such equities in favor
of the makers.

TRUSTS—SALES OF TRUST ESTATE—RIGHTS OF PURCHASER—NOTICE
—CAVEAT EMPTOR.   Where a trustee for creditors sold a lot belonging
to the trust. estate, for the sum of $4,750, agreeing with the pur-
chaser to satisfy an existing mortgage for $4,000 which was a lien
upon the lot and other property, the purchasers giving back a pur-
chase money mortgage in reliance upon the representations that the
prior mortgage would be paid, neither the trustee nor a holder of
such purchase money mortgage with notice can foreclose the same
without first extinguishing and satisfying the prior lien, on the
theory that the purchaser bought at his peril; since the doctrine
of *caveat emptor* in judicial sales has no application where the sale
was made for the purpose of satisfying the lien with which the
property was burdened.

Appeal from a judgment of the superior court for Chehalis
county, Sheeks, J., entered January 2, 1914, decreeing the
foreclosure of a mortgage and dismissing a cross-complaint,
upon sustaining demurrers to affirmative defenses and the
cross-complaint.   Reversed.

*A. Emerson Cross*, for appellants.

*T. H. McKay*, for respondents.

PARKER, J.—This action was originally commenced in the
superior court by Barker and son, assignees of the· trustee
for Waldron and wife, and their creditors, against Pfund and
wife, to foreclose a mortgage executed by Pfund and wife to

[1]Reported in 141 Pac. 327.   .

the trustee, upon a lot in Aberdeen, to secure the purchase price thereof. Thereafter, J. B. Benson, the present trustee, successor to W. I. Agnew, deceased, the original trustee, was by order of the superior court, made a party defendant upon the filing of the affirmative answer and cross-complaint of Pfund and wife. The question presented here is as to the sufficiency of the affirmative answer and cross-complaint of Pfund and wife as constituting a defense and grounds for the relief prayed for by them, as against the demurrers thereto of Barker and son, and Benson the trustee. These demurrers were, by the court, sustained, when, Pfund and wife electing to stand upon their answer and cross-complaint and not plead further, judgment of foreclosure was rendered against them as prayed for by Barker and son. From this disposition of the cause, Pfund and wife have appealed. Barker and son have filed an answering brief. Benson, trustee, has not filed any answering brief.

The complaint of Barker and son presents a case of simple mortgage foreclosure, alleging, in substance, that on July 5, 1910, Pfund and wife executed and delivered to W. I. Agnew, as trustee, four certain promissory notes, of $500 each, payable in fifteen, eighteen, twenty, and twenty-four months after date, respectively; that, to secure the payment of these notes, together with certain other notes executed by Pfund and wife to Agnew as trustee, aggregating, in all, $4,750, Pfund and wife executed and delivered to Agnew, as trustee, a mortgage upon lot 12, block 67, of Weatherwax & Benn's Second Addition to the city of Aberdeen; that these four notes were assigned and transferred by Agnew, trustee, to Barker and son before the commencement of this action, resulting in an equitable assignment of the mortgage; and that so much of the debt as is evidenced by these four notes is unpaid, for which foreclosure is prayed.

The amended affirmative defense and cross-complaint of Pfund and wife is quite voluminous, and alleges a state of facts somewhat involved. So far as material here, these facts

may be summarized as follows: On May 24, 1909, H. B. Waldron and wife executed and delivered to W. I. Agnew a trust deed, which, in so far as we need here notice its terms, conditions and recitals, is as follows:

"Witnesseth: that the said parties of the first part, in consideration of the sum of $1 and other valuable considerations and services to be done and performed by the second party, the said parties of the first part do by these presents grant, bargain, sell, convey and confirm unto the said party of the second part, in trust for the benefit of the said parties of the following estate, lying and being in the county of Chehalis, state of Washington, described as follows, towit:

"Lots 5, 6, 7, 8 and 10, block 56; also lot 12, block 67; all in Weatherwax & Benn's Second Addition to the city of Aberdeen, Chehalis county, Washington; also lots 4, 5, 6, 7, 8, 9, 10, 11 and 12, block 21, Campbell's Addition to the city of Hoquiam, Chehalis county, Washington, with the hereditaments and appurtenances thereunto belonging or appertaining, together with the rents, issues and profits thereof; also that this deed is a trust deed for the purpose of placing the property described, under the control of the second party for a sale and disposition of the same, or sufficient thereof to pay the indebtedness hereinafter scheduled, but that no sale thereof can be made by the trustee, the second party hereunder during the period of one year from the date hereof less than the following prices, unless the parties of the first part join with the said trustee in the execution of the deeds therefor, to wit:

Lot 10, block 56, together with the improvements
and furnishings .............................$1,600.00
Lots 5 and 6, block 56........................ 4,250.00
Lot 12, block 67.............................. 4,500.00
Lots 4 to 12, inclusive, Hoquiam, Campbell's Ad-
dition ...................................... 900.00

for inside lots and $1,250.00 for corners or $9,000.00 in one parcel.

"The second party to have and to hold said property for the purpose of satisfying and cancelling the indebtedness hereinafter scheduled, and for which purpose this trust is created.

"The said party of the second part to have the right to sell any part or portion of said premises for the purpose of

realizing sufficient moneys to pay and satisfy the said indebtedness and for that purpose to make and execute deeds to any portion of said premises with the full covenants and warranty that no sale of any portion of said premises shall be made without full notification to the creditors scheduled herein and the consent of a majority thereof to such sale and the said parties of the first part agree to execute and deliver if necessary such conveyance, by way of deeds or otherwise as may be necessary to satisfy the demand of any intending purchaser.

"The said party of the second part hereby agrees with the said parties of the first part that he will accept the title to the said property in trust. That he will control and manage the same to the end that all income arising from said property shall be applied, first, to the payment of the taxes, second, insurance, third, interest on mortgages on the said real estate; and all amounts remaining above expenses shall be applied *pro rata* upon the indebtedness, giving preference to such debts as are now secured by mortgage upon said property to the end that the income may be applied to release and pay the amount due and owing from said first parties to the following person, to wit:

| | |
|---|---|
| Mrs. C. E. Burrows, Mortgage, Hotel Waldron | $5,000.00 |
| H. L. Cook & Co., Mortgage, Residence | 1,600.00 |
| George B. Hopkins, Mortgage, cor. Jefferson | 1,000.00 |
| Ella Waldron, Mortgage, Hoquiam property | 4,000.00 |
| Unsecured claims. | |
| Hartung & Norin Co | $ 635.00 |
| Gabrielson & Holmer | 545.00 |
| Kaufman Bros. | 600.00 |
| H. Barker & Son | 1,518.89 |
| Hayes & Hayes, Bankers | 3,434.10 |
| S. E. Slade Lumber Company | 1,175.42 |
| Aberedeen State Bank | 952.54 |

"That in addition thereto, he, the second party, will endeavor to secure for the parties of the first part a loan or loans upon the property held by him in trust for the purpose of concentrating the indebtedness into a few claims and at as low rate of interest as is possible; and the said parties for such purpose agree to execute such encumbrances by way of mortgage as may be necessary and deemed advisable by the second party to carry out such intentions.

"The second party further agrees that he will faithfully perform his trust, and that upon the discharge thereof he will reconvey said property, upon payment to him of such legitimate charges and expenses incurred by him in carrying out the terms of this trust, together with a reasonable compensation for his services in regard thereto, except that said party shall only be holden to reconvey such property as may remain in trust after satisfying the indebtedness set out, out of the property received by him.

"Said first parties also agree to use their best endeavors to assist the said second party and the creditors to obtain purchasers for the property and all proceeds from any sales shall be paid to second party and distributed by him amongst the creditors under this trust."

In June, 1910, Agnew, as trustee, offered and proposed to sell to Pfund and wife lot 12, block 67, Weatherwax & Benn's Second Addition to Aberdeen, of the trust property "free and clear of all liens and encumbrances" for the sum of $4,750, "said sum being the reasonable and full value" thereof. As evidence of his authority for making such sale as trustee, Agnew exhibited to Pfund and wife an abstract of title to this lot, showing the provisions, conditions and recitals of the trust deed, showing also that the lot was subject to a mortgage for the sum of $4,000 in favor of one Ella Waldron of the state of Wisconsin. Pfund and wife were then assured by Agnew, as trustee, that, in the event that they would purchase the lot for $4,750, they would receive a deed thereof, free and clear of any and all encumbrances, and particularly free and clear of the $4,000 mortgage of Ella Waldron. Pfund and wife, relying upon the provisions and conditions of the trust deed, and the representations made by Agnew, as trustee, that the encumbrances against the lot, and particularly the mortgage of Ella Waldron, would, upon the completion of the purchase, be satisfied and discharged, agreed to purchase the lot and pay therefor the sum of $4,750. At the same time, and as one transaction, Agnew delivered to Pfund and wife a deed for the lot, containing full covenants and warranty, executed by H. B. Waldron and wife, grant-

ors in the trust deed, and also himself, as trustee, executed and delivered a deed for the lot to Pfund and wife. Thereupon, Pfund and wife, "with full reliance upon, and still relying upon the conditions of the trust deed, and the representations, covenants and agreements of said trustee, as heretofore made, and as contained in said deeds of conveyances, accepted the said deeds of conveyances" and thereupon as full consideration for the lot, free and clear of all encumbrances, made, executed, and delivered to Agnew, as trustee, their certain promissory notes, including the notes here involved, for the aggregate sum of $4,750, and secured payment thereof by the execution of the mortgage upon the lot here involved. Pfund and wife executed all of these notes and the mortgage securing the same without any consideration whatever save as above stated.

H. Barker and son, these plaintiffs and respondents, are the same H. Barker and son mentioned in the trust deed to Agnew, as creditors of J. B. Waldron and wife. They were active in bringing about the making of the trust deed and the creation of the trust, and had personal knowledge of the provisions, conditions, and recitals contained in the trust deed. They also knew that the reasonable market value of this lot, therein mentioned, sold to Pfund and wife, did not exceed $4,750, the purchase price thereof paid by Pfund and wife to Agnew as trustee by execution of the notes and mortgage for that sum. Barker and son also knew that Pfund and wife were entitled to have this lot clear and free from all encumbrances, and that the $4,000 mortgage in favor of Ella Waldron was to be satisfied by Agnew, as trustee, in so far as it was a lien thereon, upon completion of the sale thereof to Pfund and wife. Notwithstanding the conditions, provisions, and recitals in the trust deed; the covenants, agreements and representations made to Pfund and wife by Agnew, as trustee, as inducement for them to purchase this lot and to execute the notes and mortgage in payment thereof; the knowledge of Barker and son relative thereto, and the active participa-

tion of Barker and son in the creation of the trust; Barker and son procured from Agnew, as trustee, an assignment of the notes involved in this action, knowing that the $4,000 mortgage of Ella Waldron upon lot 12, against which the agreements and covenants to Pfund and wife had been made, had not been paid, and that Pfund and wife would receive nothing as consideration for the notes and mortgage given by them in payment of the lot, unless the mortgage to Ella Waldron be satisfied as the trustee was bound to do. Barker and son, by procuring the assignment of these notes from Agnew, as trustee, "seek to divert the trust fund evidenced by said notes, and mortgage, made the subject of this action, and to wrongfully take an inequitable, unjust and unconscionable advantage of these answering defendants and cross-complainants." Pfund and wife have paid upon the indebtedness evidenced by the notes and mortgage given by them as the purchase price of the lot $2,300, and have received nothing therefor as yet, except the naked title to the encumbered lot which, with the $4,000 Ella Waldron mortgage and accumulated interest thereof, is of no value whatsoever; all of which was well known to Barker and son before commencing this action. If the terms and conditions of the trust deed had been carried out by the trustee and the mortgage of Ella Waldron upon the lot satisfied and discharged in so far as it was a lien thereon, Pfund and wife would have long since paid the notes sued upon in this action.

The mortgage of Ella Waldron is a lien upon, and covers lots 4 to 12, inclusive, block 21, Campbell's addition to Hoquiam, as well as lot 12, block 67, Weatherwax & Benn's Addition to Aberdeen, sold by Agnew, as trustee, to Pfund and wife. Of the property conveyed to Agnew by the trust deed, there remains in the trust lots 4 to 12, inclusive, block 21, Campbell's Addition to Hoquiam, upon which the mortgage of Ella Waldron is also a lien superior to the claims of the trust, which lots are of sufficient value to satisfy that mortgage if sold by the present trustee under order of the court.

This is the only property remaining undisposed of, belonging to the trust estate. E. B. Waldron and wife are insolvent and unable to respond in damages for the breach of their covenants of warranty contained in their deed executed by them and delivered by the trustee to Pfund and wife, together with the deed from Agnew, as trustee, to Pfund and wife for lot 12, block 67, Weatherwax & Benn's Addition.

Since the execution of the trust deed, Pfund and wife have made payment to the extent of $2,300 upon the indebtedness evidenced by their notes given in payment of lot 12. Agnew has died since then, and J. B. Benson has been, by the superior court, duly appointed trustee, succeeding to all the powers and duties of Agnew as such. The $4,000 mortgage of Ella Waldron upon lot 12 and upon the Hoquiam lots is past due and unpaid. Benson, as trustee, has power to sell lots 4 to 12, inclusive, of block 21, Campbell's Addition to Hoquiam, and, by such sale, could satisfy the mortgage of Ella Waldron, and thus clear the title of Pfund and wife to lot 12. In concluding their affirmative defense and cross-complaint, Pfund and wife pray for relief as follows:

"(1)   That the plaintiffs take nothing by their suit and that the assignment of the notes made the subject of this action from the trustee, W. I. Agnew, to the plaintiffs be cancelled and the notes so cancelled be surrendered up to these answering defendants; unless within such time as this court may prescribe, the plaintiffs, individually, or in connection with the defendant J. B. Benson as trustee, cancel or cause to be cancelled of record and satisfied of record the mortgage and indebtedness upon said lot 12, in block 67 aforesaid, involved in this suit, to the end that these answering defendants and cross-complainants have and recover a clear and perfect title to the property last referred to, in which event, last aforesaid, these defendants and cross-complainants stand ready and willing to pay the mortgage indebtedness involved in this suit.

"(2)   That in case the plaintiffs in this suit and the defendant trustee herein, are unable or refuse, jointly or severally, to clear, or cause to be cleared, the title to said lot 12, in block 67, Weatherwax & Benn's Second Addition, afore-

said, then and in that event, these answering defendants and cross-complainants, in addition to having the notes and mortgage made the subject of plaintiff's action surrendered up and cancelled, as aforesaid, pray that the defendants and cross complainants, have and recover herein judgment in the sum of Two Thousand Three Hundred Dollars for money paid as herein set forth, together with interest on such payments from the time of each partial payment until the time of trial, at the rate of eight (8) per cent per annum.

"(3)   That the chancellor by order, judgment and decree made and entered herein direct a sale by the said trustee of lots 4 to 12, inclusive, in block 21, Campbell's Addition, aforesaid, to the end that the mortgage indebtedness of the said Ella Waldron embracing the property involved in this suit, be discharged with the proceeds of such sale, if sufficient therefor.

"(4)   That these answering defendants and cross-complainants have their costs herein, and that they receive such other and further relief in the premises as to the judgment and conscience of the court may seem just and equitable."

Proceeding, as we must in our present inquiry, upon the assumption that these allegations of the answer and cross-complaint of Pfund and wife are true, it seems quite plain to us that Barker and son stand in the shoes of the trustee to whom the notes and mortgage were given by Pfund and wife for the purchase price of lot 12, sold to them by Agnew as trustee.   Barker and son actively participated in the creation of this trust, knew its purpose, terms, and conditions, were beneficiaries thereof, knew of the representations, terms and conditions attending the sale of lot 12 to Pfund and wife by Agnew as trustee, knew of the existence of the Ella Waldron mortgage as a lien upon that lot, and knew of all of the rights possessed by Pfund and wife as against the trustee, the trust estate, and H. B. Waldron and wife.   Possessing all of this knowledge, Barker and son took these notes by assignment from Agnew as trustee.   Clearly, they were not innocent purchasers thereof, but took the notes subject to the defenses that might be made against their collection and the foreclos-

ure of the mortgage given to secure them in the hands of the trustee. Our problem, then, is, in substance, the same as if this were an attempted foreclosure by the trustee.

Counsel for respondents Barker and son invoke the rule of *caveat emptor*, and argue that Pfund and wife only acquired the interest of the trust estate, subject to the Ella Waldron mortgage without recourse against the trust estate for failure of the trustee to satisfy that mortgage, seeking vigorous application of the rule of *caveat emptor* as applied generally to sales made by executors, administrators and trustees and judicial sales, where the interest of the trust estate or judgment debtor alone is sold for the purpose of satisfying claims other than some particular lien against the property so sold. Counsel seem to presume, and, we think, correctly, that the title acquired by Pfund and wife to this lot was, in fact, acquired by the deed of Agnew as trustee, and that the accompanying deed from H. B. Waldron and wife to Pfund and wife was little else than the giving of their approval of the sale and conveyance made by Agnew as trustee to Pfund and wife. The fallacy of counsel's argument in seeking to invoke the doctrine of *caveat emptor* here, we think, is rendered manifest by the fact that the sale made by Agnew as trustee to Pfund and wife of this lot was for the purpose, among others, of extinguishing and satisfying this very mortgage lien of Ella Waldron against the lot. To apply the doctrine of *caveat emptor*, as here sought by counsel, would be like applying it to a judicial sale in a mortgage foreclosure with a view to having the purchaser take the property still burdened with the mortgage foreclosed. It would be little short of absurd to hold that a purchaser at such a sale, though subject to the rule of *caveat emptor*, generally speaking, would acquire the property still subject to the very mortgage which the sale was made to satisfy.

If the prayer of Pfund and wife in their answer and cross-complaint amounted simply to a claim of nonliability at all events, upon the notes here sued upon, there would probably

be ground for the sustaining of the demurrers of Barker and son and the trustee. But, manifestly, Pfund and wife are simply seeking to protect themselves from a situation which is threatening their rights and which was brought about by acts of the trustee and Barker and son; and which will result in at least a legal fraud being perpetrated upon them unless their rights are protected by proper judgment and decree of the court. We are of the opinion that the allegations of the answer and cross-complaint of Pfund and wife show a state of facts entitling them to relief; either in some of the alternative forms prayed for, or in some other appropriate form within their general prayer. We conclude that the trial court erred in sustaining the demurrers to the answer and cross-complaint, and that the judgment must be reversed.

It is so ordered, and the cause remanded to the superior court for further proceedings.

CROW, C. J., MORRIS, FULLERTON, and MOUNT, JJ., concur.